[PHILADELPHIA, FEBRUARY 2nd, 1835.]

## The COMMONWEALTH ex relatione JAMES LESLIE *against* the COUNTY COMMISSIONERS.

Where there is any doubt as to the validity of an election, the Court will not interfere by mandamus, but will put the parties in the first instance to an information in nature of a *quo warranto.*

A disorder having arisen at a ward election for assessors and inspectors of the general election, the constable of the ward and the persons alleging themselves to have been chosen judges, adjourned the election from the usual place designated in the constable's notice to a neighbouring house, where the relators had the highest number of votes, and were returned by the constable as duly elected. The electors who remained at the usual place designated in the notice, elected judges, and held an election without calling in the overseers of the poor or other persons pointed out by the act of assembly. The persons here elected were returned by the judges to the county commissioners as duly elected.

*Held,* That both elections were illegal: and that this being a case of failure to elect, assessors were properly appointed by the county Commissioners.

The Commissioners have power to inquire into the irregularity of a ward election; and the constables return is not conclusive on them.

THIS was a rule to show cause why a *mandamus* should not issue to the Commissioners of Philadelphia county, commanding them to receive the return of the assessment made in Locust Ward by *James Leslie, Vollum* and *Sullivan,* to make payment to them of the amount prescribed by law for their services in that behalf, and to appoint as collector of taxes in said ward, one of the individuals returned to them by said *Leslie, Vollum* and *Sullivan.*

To this rule the Commissioners made return that they had duly recognized and appointed *John Rutherford,* Senior, *John Benner* and *Barnet Quinn,* as the assessor and assistant assessors of the said ward.

The case grew out of a contested election for assessors and inspectors held the 3d October 1834, in Locust Ward.

The facts *as stated in the return of the* Commissioners were as follows:

On the 16th September, 1834, *Daniel B. Lippard,* constable of the said ward, in conformity with the directions of the act of assembly, gave notice that an election would be held at the house of *James Hutchinson,* on Friday the 3d October, for one assessor and two assistant assessors for said ward, for the ensuing year, and two inspectors for the general election.

Two sets of returns were entered in the Commissioner's office, one signed by *Samuel Reess, Jacob Gress* and *Robert Miles,* who returned that at an election held pursuant to public notice at the house of *James Hutchinson* on the 3d October, *John Rutherford* was duly elected assessor, and *James M. Linnard* and *John Benner* assistant assessors.

Another return signed by *Lippard*, the constable of the ward, *Lane Schofield* and *James G. Caldwell* as judges, certified that *James Leslie* had received the highest number of votes for assessor, and *Henry Vollum* and *Nathan P. Sullivan* the highest number for assistant assessors.

The return of the Commissioners further stated, that the electors of Locust Ward assembled at the place designated by the constable, and at 2 o'clock, P. M. on the 3d October, 1834, chose the judges of the election. Who these judges of the election were, it had been impossible to ascertain with certainty. On the opening of the polls, or while preparations were making for it, much confusion and disorder arose, and a number of persons forcibly and violently interfered with the due opening of the polls. These persons with the constable of the ward, and the two citizens whom they alleged to have been elected judges, opened polls at a neighbouring house, and there impartially and tranquilly elected the persons mentioned in their return. That the electors who continued at the place designated in in the public notice by the constable, proceeded in the election impartially and tranquilly, and elected the persons mentioned in the return first above referred to. That the public *exigencies* requiring them to act without delay, they had chosen the persons mentioned by them in their return.

Cause was shown against the rule by *Dallas* (Attorney-general,) referred to *Purd.* 233, sec. 1. Act of 19 of March, 1824, *id.* 259. Act of 15 of April, 1834. *Pampl. laws* of 1833-4, p. 538, sec. 2, sec. 81, sec. 87.

*Meredith* and *Scott* argued in support of the rule.

The opinion of the court was delivered by

Rogers, J.— A rule has been obtained on the commissioners of the county of Philadelphia, at the instance of *James Leslie*, to show cause, why a *mandamus* should not issue, directing them to receive the return of the assessment made in Locust Ward, by *James Leslie, Henry Vollum*, and *Nathan P. Sullivan ;* to make payment to said persons of the amounts prescribed by law for their services as assessor, and assistant assessors, of said ward; and to appoint as collector of taxes in said ward, one of the individuals returned to them for that purpose, by said *Leslie, Vollum* and *Sullivan.* Cause has been shown, the grounds of which are stated at large in the return of the commissioners to the rule.

For the relator to succeed in this application, it must clearly appear that the assessors *de facto*, were not duly elected; for if it were a doubtful election, a *mandamus* ought not to be granted. I do not take into view, that the assessors *de facto*, were not parties to this rule, as we shall consider the case in the same light as if the rule was amended by the insertion of their names on the record.

(The Commonwealth ex rel. Leslie *v.* the County Commissioners.)

But still the objection remains, that when there is any doubt of the validity of the election, the court will not interfere by *mandamus,* but will put the party in the first instance to an information in nature of a *quo warranto.* Before a *mandamus* would be granted against the commissioners, we should require that there should be a judgment of *ouster* against those who were actually performing the duties of the office. And this would be a sufficient answer to the rule; for here it is plain, that the election or appointment of the officers *de facto,* is not apparently such a one as is merely colourable and void. *Rex.* v. *Bankes et al.,* 3 *Burr. R.* 1454.

But we do not intend to rest the case on this ground, as the effect would merely be to turn the relators round to a new proceeding. This course would not meet the wishes of either party.

I shall examine the case in two points of view. 1. What is the title of the relators; and 2d, the title of the respondents, and by respondents I mean the officers *de facto,* to whom the commissioners directed their precept, and whom we take to be parties to the rule.

I must first premise, that as a prerequisite to the issuing of a *mandamus,* it must appear not only that the respondents have no title but that the relators have. The writ is grounded on the suggestion of their own right. It cannot be claimed as a right that the court is bound to issue a *mandamus* to compel the commissioners, for instance, to pay money for services rendered as assessors, when they are not legally such, nor even colourably so. And this makes it our duty to inquire by what title the relators claim to be assessors. The counsel for the relators rest their pretensions on the return of the constable, made in pursuance of the 4th section of the act of the 11th of April, 1799. The act directs that the constables holding elections shall make a return thereof, signed by the judges, within ten days, to the commissioners of the proper county, &c. who shall file the same in their office. They contend that the commissioners are compelled to receive and file the return of the constable, and to issue their precept to the persons therein named, to make the assessment. But conceding that the commissioners have no discretion in relation to the return, (a point which I shall hereafter notice,) yet it is not perceived how this helps the relator's case, unless it can be also shown that the return is conclusive on the Supreme Court, and that in fact there is no tribunal in the commonwealth competent to examine into, and correct gross fraud or illegality of procedure, on the part of the returning officer. It is in vain to deny, that this court have a superintending power by information, to examine and correct abuses in such cases, and I cannot conceive how this can be done in many cases unless we go behind the return. It is not sufficient that forms have been observed, but it is necessary to its validity that the election shall have been conducted in the manner prescribed by law. By the return of the commissioners in which the facts are stated, with the requisite clearness and precision, it

appears that the constable, in pursuance of the directions of the act of assembly, gave notice of the time and place of holding the election. That the electors assembled at the time, and the place designated, that being the place generally used for the purposes aforesaid; that much confusion and disorder having arisen, the constable and the two persons who it was alleged were elected judges, removed the election from the place designated, and opened the polls at a neighboring house; at which place the relators had the highest number of votes, and were returned by the constable and judges as duly elected assessors of the ward. The change of place was the act of the constable, or of the constable and judges; and if such authority is vested in him or them, it must be by virtue of some act of assembly which has not been produced. The only mode in which the place can be altered, is by force of the act of the fifteenth of April, 1807, which makes it lawful for a majority of the qualified electors present at any meeting held at the usual place for electing assessors or inspectors, or other township officers, to change the place of holding said election to any suitable or convenient house, best adapted for the convenience of the inhabitants of the respective townships. Now whether the majority present would have had the right to adjourn the election it is useless to determine, as there is no evidence of an overwhelming necessity; nor is there any allegation that any vote was taken to ascertain the wish of the electors. We are therefore of the opinion, that the relators were not legally elected, and have no title to the office of assessors, and this is of itself a decisive answer to the rule for a *mandamus.*

I shall now proceed to examine the respondent's title; and by the respondents, as before intimated, we mean the persons appointed assessors by the commissioners. In discussing the question, it will be necesssary to inquire what rights were acquired by the election held at the proper place. For after the secession of the constable, the electors who remained elected judges, who held an *election at the* usual place designated by the constable, and who returned to the commissioners that *John Rutherford, James M. Linnard,* and *John Benner,* had received a majority of votes, stating the number each had received, and that they were duly elected assessors for the ward. This was a proceeding wholly unwarranted, for there is no law which authorizes an election under such circumstances, and in the manner above stated. For the 2d section of the act of the 15th of February, 1799, prescribes that if any constable shall neglect or refuse to perform the duties required of him by that act, he shall forfeit the sum of fifty dollars; and in case of neglect, refusal, death, or absence from the county, of any constable or constables, the overseers of the poor of the township, ward or district. When there shall be no overseer of the poor, in such cases the supervisors of the highways shall perform the duties required to be done by the constable, &c. This act relates to the election of inspectors; but by

(The Commonwealth ex rel. Leslie *v.* the County Commissioners.)

the 3d section of the act of the 11th of April, 1799, the constable is directed to hold the elections; and the elections are ordered to be holden under the same regulations as inspectors for the general election are directed to be chosen. It is then clear, that on refusal, or neglect of the constable, the overseers of the poor, or in default of an overseer of the poor, the supervisors of the highway, or in the city the street commissioners, who take the place and perform the duty of supervisors, should have been called in by the electors to conduct the election. In default of such an officer, no judges could be properly chosen, nor legal election held. This then is the case of a failure on the part of the electors to elect; and the 87th section of the act of the 15th of April, 1834, provides, that if the electors of any township shall fail to choose an assessor or assistant assessor, at the time appointed by law, or if any person elected to such office shall neglect or refuse to serve therein, or if any vacancy shall happen therein by death or otherwise, the commissioners of the county shall appoint a fit person to fill the office, who shall have the same powers, be subject to the same penalties, and receive the same compensation, as if he had been elected, &c. This act should receive a liberal construction, and if there is a failure to elect for any cause whatever, the power to appoint (for without it the public would be deprived of these important officers) devolves upon the commissioners. On the ground that there had been no election, the commissioners appointed the respondents assessors for the ward, and in this we conceive they exercised a duty imposed upon them by the act. But the counsel for the relators contend, that the commissioners were bound to receive and file the constable's return, and that it was their duty to issue their precept to the persons returned by him as duly elected. Without adverting particularly to the form of the return, it must be observed that two returns were made, and it was for them to decide which return was correct, or whether either of them should be received. As it is made the duty of the commissioners in a certain event to appoint, that seems necessarily to imply the power to inquire whether the event had taken place, on the happening of which, it became their duty to act. It is a startling doctrine, that in case of a notorious fraud, or a palpable violation of the law, a constable could palm an officer on the public by the force of his return. That by merely omitting to state the place where the election was held, he could control the election, when it was admitted that it was not in fact held at the place appointed by the act. If this be the law, it is useless to go through the mockery of an election. The constable may return whom he pleases, always taking care that his return is correct upon its face. It would be better to give the appointment to the constable at once, without the useless ceremony of an election. The act admits of the construction which we have given to it, nor do we perceive any danger in committing to the commissioners the power to examine into the illegality

of elections conducted as this has been. The election is local, but the commissioners represent the whole county. They may be fairly supposed, as in some measure exempt from the feelings which act on the electors of the ward or township, and therefore a reasonable hope may be entertained of something like impartiality. If however this hope should fail, the aggrieved party may resort to an information, when the whole case will be examined, and right and justice done.

In the course of the argument, reference was made to the act of the 19th of March, 1824, but that act only gives jurisdiction to the Quarter Sessions, in the case of a contest with respect to the election of county commissioners, auditors, and other county officers. An assessor is not a county, but a township officer, a distinction plainly marked in the various acts of assembly, and particularly in the act of the 15th of April, 1834, entitled an act relating to counties and townships, and county and township officers.

Rule discharged.