CHARLES H. COOKE *vs.* BOSTON AND LOWELL RAILROAD
CORPORATION.

Middlesex.   January 30. — June 27, 1882.

The charter of a railroad corporation provided that, if the railroad should cross any highway, the railroad should be so constructed as not to impede or obstruct the safe and convenient use thereof; that the corporation should have the power to raise or lower such highway, and, if it should do so, and should not so raise or lower the same as to be satisfactory to the selectmen, the latter might require in writing of the corporation such alteration or amendment as they might think necessary; and that, if the required amendment or alteration was reasonable and proper, and the corporation should unnecessarily and unreasonably neglect to make the same, the selectmen might proceed to make such alteration or amendment, and might recover the cost thereof from the corporation. *Held,* in an action for personal injuries, occasioned by the defective construction of a bridge built and maintained by the corporation over a highway, at a place where the highway had not been raised or lowered, that, under its charter, the corporation was bound so to construct and keep its railroad as not to impede or obstruct the safe and convenient use of the highway; and that, even if the bridge was adequate for such use when built, and an increased use rendered it inadequate, the corporation must alter the bridge.

TORT for personal injuries occasioned to the plaintiff, on May 8, 1880, by the defective construction of a bridge built and maintained by the defendant corporation in Winchester. Answer, a general denial. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court ·on appeal, upon agreed facts, in substance as follows:

At the time of the accident the plaintiff, who was accustomed to the management of horses, and to driving horses in all kinds of vehicles, was driving an omnibus drawn by two horses along the north side of Cross Street, a highway in Winchester, about half past one o'clock in the morning of the day above named, it being dark at the time. He did not see the bridge in question, which extends over and spans Cross Street, until he reached it. He then leaned over on his seat, on his right side, when his left shoulder came in contact with a large joist, which was one of the supports of the planking of the bridge, and was nine feet and two inches above the road, and was distant about eight feet from the end of the bridge; and he received the injuries complained of. His horses, which were walking at the time, stopped; and he was using due care.

There was a light in the front part of the omnibus, under the foot rest, but it did not disclose the bridge to the plaintiff. He had never before driven an omnibus on Cross Street, but had driven over the street and under the bridge three or four times in a buggy. The omnibus was eight feet and nine inches high.

Cross Street has been used by the public for travel for more than two hundred years. Under the bridge, and for a short distance on each side, Cross Street has two paths or ways wrought for carriage travel; that on the south side being about six inches lower than the one on the north side, thus rendering the bridge higher above the south driveway than the north driveway, and thus allowing more space for vehicles to pass under the bridge on the south driveway than on the north driveway. The two ways thus constructed and maintained are separated from each other by the stone supports of the bridge, and vehicles cannot pass from one to the other under the bridge. The defendant was incorporated by the St. of 1830, c. 4.

These ways were so constructed and graded by the defendant when the railroad was built, in 1832, and have been kept substantially the same ever since. The grade of the railroad has never been changed at that place. The location of the railroad is there six rods in width, the bridge being in the centre of the location. The bridge has been maintained by the railroad corporation as a part of its railroad. On May 19, 1880, the plaintiff gave to the defendant a written notice of the time, place and cause of the accident, in accordance with the statute.

If, upon these facts, the plaintiff was entitled to recover, judgment was to be entered for him in the sum of $500; otherwise, for the defendant.

*T. H. Sweetser & G. A. A. Pevey*, for the defendant.

*J. W. Johnson*, (*E. F. Johnson* with him,) for the plaintiff.

C. ALLEN, J. It is by implication conceded by the defendant that, at the time of the injury received by the plaintiff, the highway at the crossing was not safe and convenient; and the defence rests upon the ground that the town, and not the railroad company, was bound to keep the highway in a safe condition. It was contended that, under § 11 of the defendant's charter, St. 1830, c. 4, it was for the selectmen of the town to say whether

or not the manner of constructing the railroad at that point was satisfactory to them, and, if not, to make it so, and to recover the cost of so doing from the railroad company; and that the utmost that the railroad company was required to do by said section was to construct its road in a reasonable and proper way. satisfactory to the selectmen, whose approval must now be assumed after so great a lapse of time.

But we are of opinion that such is not the true construction of the statute. Section 11 provides that, if the railroad shall cross any highway, the railroad shall be so constructed as not to impede or obstruct the safe and convenient use thereof; and that the corporation shall have the power to raise or lower such highway; and if it shall raise or lower such highway, and shall not so raise or lower the same as to be satisfactory to the selectmen, said selectmen may require in writing of the corporation such alteration or amendment as they may think necessary; and, if the required amendment or alteration be reasonable and proper, and the corporation shall unnecessarily and unreasonably neglect to make the same, the selectmen may proceed to make such alteration or amendment, and may recover the cost thereof from the corporation.

It thus appears, in the first place, that the selectmen have power to interfere only in a case where the corporation has raised or lowered the highway; and it is not distinctly found in this case that the defendant corporation at the crossing in question did raise or lower the highway. The statement that "these ways were so constructed and graded by the defendant when the railroad was built, in 1832, and have been kept substantially the same ever since," does not necessarily or fairly imply that the highway was raised or lowered; and the further fact, which is stated, that " under the bridge, and for a short distance on each side, Cross Street has two paths or ways wrought for carriage travel; that on the south side being about six inches lower than the one on the north side, thus rendering the bridge higher above the south driveway than the north driveway," does not necessarily imply that the highway was raised or lowered in either of the driveways, and especially does not enable us to perceive that it was so raised or lowered in that driveway where the plaintiff's injury was received. If the elevation of

the highway was changed at all, it may have been in the other or south driveway.

But, in the second place, even in a case where the selectmen are not satisfied with the manner of constructing a crossing, their determination upon the question is not conclusive. They may require in writing of the corporation such alteration as they may think necessary; but if the corporation neglects to make the same, it is only in cases where the required alteration is in fact reasonable and proper that the selectmen may proceed to make the same, and recover the cost from the corporation. The words "if the required alteration be reasonable and proper" necessarily submit the determination of that question to another tribunal than the selectmen themselves, namely, to the court. *Commonwealth* v. *New Bedford Bridge*, 2 Gray, 339. This case, therefore, is not like cases where, under the statutes, selectmen may or must determine in advance, and prescribe the method of doing certain acts which might otherwise be deemed unlawful obstructions to highways. *Young* v. *Yarmouth*, 9 Gray, 386. *Commonwealth* v. *Boston*, 97 Mass. 555. *Cushing* v. *Bedford*, 125 Mass. 526. This construction of this same statute was also given by this court, in *Lowell* v. *Boston & Lowell Railroad*, 23 Pick. 24.

It is further contended by the defendant, that the highway was graded and constructed, at the place of the injury, in view of the probable travel upon the same, and suitable for all kinds of conveyances then in use, and that such an omnibus as the plaintiff was using was not in existence or contemplated at that time, and that, if the mode of travel changes, the charter does not oblige the railroad corporation to provide for the future wants of travellers. The agreed statement of facts, however, does not show what kinds of conveyances were in use in 1832; nor can we accept that construction of the statute which would limit the duty and obligation of the railroad company to providing for the wants of travellers at that time. The Legislature intended to provide against any obstruction of the safe and convenient use of the highway, for all time; and if, by the increase of population in the neighborhood, or by an increasing use of the highway, the crossing which at the outset was adequate is no longer so, it is the duty of the railroad corporation to make such alteration

as will meet the present needs of the public who have occasion to use the highway. The case of *Commonwealth* v. *New Bedford Bridge, ubi supra,* is closely in point, and renders unnecessary any further discussion of the reasons for this construction of the statute. *Judgment for the plaintiff affirmed.*