EDWARD SIMONS

v.

THE PEOPLE, ETC., EX REL. ANDREW DUNNING.

1. QUO WARRANTO—PLEADING.—In proceedings *quo warranto* instituted for the purpose of testing the title to an office, if the defendant seeks to justify, he must set out his title specifically and distinctly, and show on the face of his plea that he has a valid title to the office, and if he fails to exhibit a sufficient authority for exercising its functions, the people will be entitled to a judgment of ouster.

2. SCHOOL TRUSTEE—OATH TO SUPPORT CONSTITUTION NECESSARY.—The taking and subscribing the oath prescribed in section 25, article 5 of the constitution of the State, to support the constitution of the United States and the constitution of the State of Illinois is an essential and necessary qualification for holding the office of trustee of schools, and without it the title to the office fails.

3. PLEADING—PLEA MUST SET OUT DETAILS.—In a proceeding for a judgment of ouster from office, where the defendant justifies, it is not enough to allege generally that he was duly elected, appointed, or that he duly qualified, but he must state particularly how he was elected, appointed, or how he qualified.

4. ELECTIONS—POLLING PLACES—PROVISIONS OF TIME AND PLACE MANDATORY.—Provisions of law which fix the time or place of holding elections are to be construed as mandatory and not merely directory, and nothing but absolute necessity will justify the holding of an election at other polling places than those provided by law.

5. SAME—OF SCHOOL TRUSTEE—MODE OF CONTESTING.—The statute prescribes a mode of contesting the election of trustees of schools as well as other officers; the mode thus prescribed is exclusive, and the contest can not be made by *quo warranto*.

6. QUO WARRANTO—FORM OF JUDGMENT.—In *quo warranto* proceedings charging defendant with usurping, entering into and unlawfully exercising the powers and duties of an office, etc., under our statute, the only judgment authorized in case the defendant is adjudged guilty as charged in the information is that of ouster from the office and a fine for unlawfully intruding into it, and the only judgment in favor of the relator, merely one for costs.

Appeal from the Circuit Court of Cook county ; the Hon. John G. Rogers, Judge, presiding.   Opinion filed May 11, 1886.

Messrs. Matthews & Dicker, for appellant.

Messrs. Crafts & Stevens, for appellee.

Bailey, P. J.   This was an information in the nature of a *quo warranto*, brought by the state's attorney, on the relation of Andrew Dunning, against Edward Simons, charging him with usurping, entering into and unlawfully exercising the powers and duties of the office of trustee of schools of township 40, range 13, Cook county.   The defendant appeared and filed two pleas, in both of which he sought to justify by showing title to said office.   To these pleas a demurrer was interposed, which being sustained, a judgment of ouster was entered against the defendant, and he now brings the record to this court by appeal.

The only question to be determined is as to the sufficiency of the pleas.   In proceedings by *quo warranto* instituted for the purpose of testing the title to an office, if the defendant seeks to justify, he must set out his title specifically and distinctly, and show on the face of his plea that he has a valid title to the office, and if he fails to exhibit a sufficient authority for exercising its functions, the people will be entitled to a judgment of ouster.   Clark v. The People, 15 Ill. 217 ; High on Extraordinary Legal Remedies, § 716.

Said pleas are too voluminous to be inserted here at length, and we shall therefore content ourselves with stating their substance so far as may seem material to the questions we deem it necessary to consider.   The first plea alleges that there was a vacancy in said office caused by the death of Albert H. Rodman, one of the trustees of schools of said township, who died on or about October 1, 1885 ; that a special election was thereupon called by the surviving members of the board of trustees to fill said vacancy, to be held on the 24th day of October, 1885; that the defendant was a candidate for said office

at said election, and received a majority of all the votes cast and was duly elected to said office; that one of the two trustees was in favor of declaring him elected, but that the other trustee would not consent so to do; that at the first opportunity that he had at a meeting of said board after said election, the defendant, having previously taken an oath to faithfully perform the duties of said office, took his seat as a member of said board, and entered upon the performance of the duties of said office, and has since continued to perform the same. The second plea alleges that on the 2d day of November, 1885, said surviving trustees declared said election held October 24, 1885, to be void, and called a new election to be held November 21, 1885; that the defendant was a candidate for said office at that election, the relator being the opposing candidate; that 993 votes were cast at said election, of which the defendant received 476, and the relator 517; that of the votes cast for the relator, 187 were cast by persons who were not legal voters or entitled to vote at said election, and that the defendant received a majority of not less than 145 of the legal votes cast at said election; that the defendant, at the first opportunity he had at a meeting of said board after the result of the said election of October 24, 1885, was known, having previously duly qualified, took his seat as a member of said board and entered upon the performance of the duties of said office, and has since continued to perform the same.

A plain defect in both of said pleas, which seems to have escaped the attention of counsel, is that it is not averred that the defendant, before entering upon the duties of said office, took and subscribed an oath to support the constitution of the United States, and the constitution of the State of Illinois, as well as an oath to faithfully perform the duties of his office, as required by section 25, article 5, of the constitution of the State. The constitutional mandate is that all civil officers, with certain exceptions which do not include trustees of schools, shall take and subscribe such oath before entering upon the duties of their respective offices. Such official oath is an essential and necessary qualification for holding the office, and without it the title to the office fails. Thus, in Thomas

v. Owens, 4 Md. 189, when the constitution required that every person elected or appointed to any office of profit or trust under the constitution, or laws made pursuant thereto, should, before entering upon the duties of such office, take and subscribe a certain official oath, it was held that Thomas, though elected to the office of comptroller, and holding a commission therefor from the governor, could not be considered as in office until qualified by taking such oath, and that until he did so qualify, he was no more comptroller than any other citizen.

In the present case, the first plea alleges merely that the defendant took an oath to faithfully perform the duties of said office. It is plain that such oath fell entirely short of the constitutional requirement. The second plea alleges simply that he "duly qualified." This is equally insufficient. The mode of his qualification should have been specifically alleged. It is said in Clark v. The People, *supra*, that where a defendant justifies, it is not enough to allege generally that he was duly elected or appointed to office, but that he must state particularly how he was elected or appointed. The same rule manifestly applies to the mode in which his qualification, which is just as essential to his title as his election, should be alleged in his plea.

But said pleas are, in our opinion, defective in other respects. As the two pleas set up entirely different titles to the office, they must be considered separately, and it is obvious each plea must stand by itself, and can derive no aid from the other. The first claims title through a special election held October 24, 1885, and the second through another election held November 21, 1885. It is claimed by the relator that the first plea fails to show a legal and valid election.

It appears from said plea that, in said township 40, there were, at the time the election of October 24th was called, seven polling places previously fixed by the county board of Cook county for purposes of general elections. Of the seven election districts to which said polling places belonged, fi e were entirely within township 40. The other two, being the election districts into which the town of Norwood Park was

then di ided, were one half within and one half outside of said township, both polling places, however, being within the township. In calling the election, the trustees directed that the polls be opened at the polling places pertaining to the election districts lying wholly within the township, but formed of so much of the other two election districts as was lying within the township a single district, and selected therefor a polling place nearer its center than either of the two polling places previously fixed by the county board.

While the question is by no means free from difficulty, we are inclined to the opinion that the trustees had no authority to form a new election district out of the two fractional districts lying within the township and to fix a polling place therefor. Under the statute in relation to elections, as amended June 22, 1885, each town in counties under township organization constituted an election precinct, but the county board was required at its meeting in the month of July, 1885, and annually thereafter, to divide the election precincts into election districts, so that each district should contain as near as practicable 400 and in no case more than 450 voters, and describe such districts by metes and bounds, and the county board was also required to fix and establish voting places for such districts, and it was provided that all general and special elections should be held at the places so fixed, and that no person should be permitted to vote at any election except in the district in which he should reside. Laws of 1885, p. 194. It is also provided by section 27 of the school law, as amended May 31, 1881, that in elections for trustees of schools in townships where, for general election, there is more than one polling place, the trustees should give notice that at each of such polling places a poll would be opened for such election. 2 Starr & Curtis' Statutes, 2206.

The language of these statutes seems to be imperative, and to leave nothing in relation to the number or location of the polling places to the discretion of the trustees. A serious difficulty, however, arises from the fact that the case of an election district lying partly within the township and partly within an adjoining township, does not seem to have been provided for. Cases may be supposed

where this apparent omission in the statute would lead to serious consequences. Thus, if in the present case, the polling places in the election districts into which the town of Norwood Park was divided had been located, as they might have been, outside of township 40, a strict construction of the statute would have resulted in disfranchising all the voters in that portion of said township lying within those election districts. There would have been no place within the township, where they could have deposited their ballots, and no power on the part of the trustees to establish one. But without attempting to suggest any rule of construction applicable to a case such as the one we here supposed, it is perhaps sufficient to say, that in the present case there was no practical difficulty in the way of calling and holding the election in strict conformity with the statute, and that we think should have been done. Polls should have been opened at both of said polling places, and the voters of the township residing within said election districts should have been given an opportunity to vote at those places.

But another and perhaps a more serious difficulty arises from the fact admitted by the plea, that the polling place fixed by the trustees in the Norwood Park district, as well as that in another district in the township, was removed on the day of the election, from the place where it had been established, to another place. In one case it was removed from the building where it was located to another building about 200 feet distant therefrom, and in the other case it was removed from the designated building across the railroad to another building, the distance of the place to which it was removed not being stated in the plea. It is alleged that no voter in either case was ignorant of the change in the polling place, or prevented from voting by reason thereof ; but there is no averment as to the reason or necessity for the removals, or by whom or by whose authority or upon what pretext they were made.

The rule seems to be well settled that those provisions of law which fix the time or place of holding elections are to be construed as mandatory and not merely directory. McCrary on Elections, §§ 114, 115. In Chadwick v. Melvin, 68 Pa. St.

333, the rule is laid down by Thompson, C. J., as follows: "A fixed place, as it seems to me, is as absolutely requisite according to the election laws, as is the time of voting. The holding of the elections at the places fixed by law, is not directory; it is mandatory and can not be omitted without error. I will not say that in case of the destruction of a designated building on the eve of an election, the election might not be held on the same or contiguous ground as a matter of necessity—*necessitas non habet legem*—but then the necessity must be absolute, discarding all mere ideas of convenience." See also Dickey v. Hurlbert, 5 Cal. 343; Knowles v. Yates, 31 Id. 83; Commonwealth v. County Commissioners, 5 Rawle, 75; Miller v. English, 21 New Jersey Law, 317.

The same rule is recognized by the Supreme Court in Stephens v. The People, 89 Ill. 342, where the following language is used: "It is, of course, essential to the validity of an election, that it be held at the time, and in the place provided by law." But we are referred to the case of Dale v. Irwin, 78 Ill. 170, as justifying the removal of the polling places in this case. There the place for holding the election was fixed by the proper authority at a certain store. When the judges of election and voters appeared at the store on the day of the election, the proprietor forbade their using it. They then repaired to another building on the same side of the street in plain sight and not more than fifty or one hundred feet distant and there held the election, all the voters knowing where the poll was opened, and no fraud or improper motive being shown and no voter complaining that he was deprived of an opportunity to vote. Under these circumstances, it was held, in a proceeding to contest the election, that there was no wrong done in holding the election at a place other than the one originally appointed. In that case, the refusal of the use of the store by the proprietor produced an absolute necessity for a change of the polling place. The designated building was no more available for the purpose of holding an election than it would have been if it had been burned down. A change had to be made to prevent a failure of the election. No such circumstances are shown by the plea in this case. So far as ap-

pears, the removal may have been the result of mere caprice and without any reason, and may have been the act of parties wholly irresponsible and unauthorized. No attempt is made to justify or explain it. The election, then, so far as these two districts are concerned, must be held to be void, and taking the votes of said district from the total vote of the township, it appears that the defendant was in the minority, and consequently not entitled to the office.

By the second plea, the defendant seeks to contest in this proceeding the election of the relator, on the ground that a large number of fraudulent and illegal votes were cast and counted for him, which being deducted from his vote, would leave the defendant largely in the majority. It is admitted that, on the face of the returns, the relator appears to have been elected, and as the contrary is not averred, it must be assumed that the relator was declared duly elected, and has qualified by taking the oath of office. Can such contest be made in a proceeding by *quo warranto?*

The statute prescribes a mode of contesting the election of trustees of schools, as well as other officers, and we are of the opinion that the mode thus prescribed is exclusive. Section 27 of the School Law provides that the manner of contesting the election of school trustees shall be the same as prescribed by the general election laws of this State, defining the manner of electing magistrates and constables, so far as applicable; "and by section 98 of the statute in relation to elections, it is provided that the county court shall hear and determine contests of election of all county, township and precinct officers (with certain exceptions, not including school trustees), and all other officers for the contesting of whose election no provision is made. Subsequent provisions of the statute prescribe the mode of procedure in cases of election contests, and section 119 provides that the judgment shall declare elected the person who shall appear to be duly elected.

We are referred to no decision in this State, where the question we are considering has been decided, but the weight of authority in other States whose statutes are similar to ours seems to be, that where a specific mode of contesting elections

is provided by statute, such mode is exclusive, and the contest can not be made by *quo warranto*. Thus in Commonwealth v. Garrigues, 28 Pa. St. 9, the statute provided that the returns of all municipal elections should be subject to the inquiry and determination of the court of common pleas, and upon complaint of fifteen or more qualified voters, such complaint to be filed within twenty · days after the election ; and that the court, in judging of such election, should proceed upon the merits thereof, and determine finally concerning the same according to the laws of the commonwealth; and it was held on *quo warranto* against one claiming and exercising the office of alderman of Philadelphia, that the remedy provided by the statute must be followed to the exclusion of the common law remedy. In Commonwealth v. Ross, 35 Pa. St. 263, which was *quo warranto* against one claiming and exercising the office of commissioner of highways, under color of a certificate of election, it was held that the certificate was the legal and *prima facie* evidence of title to the office, and that it could be set aside only in the mode prescribed by the statute, and that the defendant's title could not be tried by *quo warranto*. In Commonwealth v. Leech, 44 Pa. St. 332, which was an application for a *quo warranto* to try the title of two rival claimants to the office of common councilman of Philadelphia the application was refused, it being held that the matter sought to be litigated constituted a case of contested election, which was to be tried in the mode especially provided in such cases, and that the statutory remedy supplied the place of the common law remedy. The same doctrine is laid down in State v. Marlow, 15 Ohio St. 114, the foregoing cases from Pennsylvania being cited with approval.

The rule is stated by Mr. High as follows: " A striking analogy exists between the remedy by *quo warranto*, information and the extraordinary remedies of injunction in equity and *mandamus* at law, in that neither of these extraordinary remedies is grantable where the party aggrieved can obtain full and adequate relief in the usual course of proceeding at law, or by the ordinary forms of civil action. And where a specific mode is provided by statute for contesting elections and

Simons v. The People.

a specific tribunal is created for that purpose, and the method of proceeding therein is fixed by law, resort must be had to the remedy thus provided, and the proceedings by information in the nature of a *quo warranto* will not be entertained. High on Extraordinary Legal Remedies, § 617.

It follows, from the foregoing authorities, that if the defendant desired to contest the relator's *prima facie* title to the office by showing that the relator's majority was produced by fraudulent and illegal votes, he should have proceeded to contest the election in the mode provided by the statute, instead of seizing the office forcibly and against the *prima facie* right of his competitor. As he has failed to avail himself of his statutory remedy, he can not in this proceeding attack the relator's *prima facie* title, arising from the apparent majority of votes in his favor, but such title must, so far as this proceeding is concerned, be deemed absolute.

We are aware that it is held in some of the States that the court, in proceedings in the nature of a *quo warranto*, may go behind the election returns and purge the election of illegal and fraudulent votes, and give judgment in favor of the party actually elected. We think it will be found, however, that in those States the power is expressly given by statute to administer such remedy in this proceeding. Such is the case in New York. See People v. Thatcher, 55 N. Y. 525. There the statute provided that the information might set forth the person rightfully entitled to the office in controversy, with an averment of his right thereto, and authorized judgment to be rendered upon such right as well as upon that of the defendant. Our statute in relation to *quo warranto* is much more restricted; the only judgment authorized, in case the defendant is adjudged guilty as charged in the information, is that of ouster from the office, and a fine for unlawfully intruding into it, and the only judgment in favor of the relator authorized by the State is merely one for costs.

It is clear, in the light of the foregoing principles, that the second plea failed to establish any title in the defendant to the office in question, and that the demurrer was properly sustained. The judgment will be affirmed.

Judgment affirmed.