THE CITY OF BINGHAMTON, Respondent, *v.* THE BINGHAMTON AND PORT DICKINSON RAILWAY COMPANY, Appellant.

*Street railway — repair of streets does not include paving — presumptive evidence that paving is necessary.*

In an action brought by a city to recover from a street railway company the expense of paving between its tracks, it appeared that the city, by its charter (chap. 291, Laws of 1867), was given the general powers of commissioners of highways; that the company was incorporated under chapter 501, Laws of 1868, and that a condition of its franchise was that it should "keep the surface of the said streets and highways within the rails, and for one foot outside thereof, and to the extent of the ties, in good and proper order and repair." The street in question had never been paved. The common council duly ordered and determined that it be paved with asphalt, having a concrete foundation. The company refused to perform its part of this work. The city did the work and assessed the expense upon the company.

Upon the trial of the action no direct proof was made by the city that at the time it ordered the asphalt pavement the space in the street occupied by the company was not in good repair, or that the pavement was necessary to keep the street in such condition.

*Held*, that the action could not be maintained.

That the obligation of the company, under its franchise to keep the surface in good repair, did not include repaving.

That the resolution of the common council directing an asphalt pavement to be laid was not presumptive evidence that such pavement was necessary and proper.

That as the rights of the company had been fixed by the legislature the city had no right to increase the burden imposed thereby, nor could it construe the meaning of said act to its own advantage.

The common council of the city adopted an ordinance in relation to street rail-
roads, which, in substance, provided that such railroad companies should, under
the direction of, and as required by the common council, "improve with such
suitable material as the common council shall direct, and in a proper manner,
between the rails, and shall keep the surface of the street inside of the rails in
good repair."

*Held*, that such ordinance did not affect the railway company.

The work in question was done under a provision of the city charter, as revised
by chapter 214, Laws of 1888. In this revision there was no provision charging
any expense for city paving upon the railway company, and there was an
express provision that all repairs to the streets should be paid for by the city.

*Held*, that the revision did not affect the franchise granted to the company in 1868,
and that it was liable only to keep the street in good repair.

APPEAL by the defendant, the Binghamton and Port Dickinson
Railway Company, from a judgment, entered in the office of the
clerk of the county of Broome on the 23d day of March, 1891, upon
the report of a referee, in favor of the plaintiff for $5,181.12 and
costs, with notice of an intention to bring up for review upon such
appeal the decision of the said referee.

*Edmund O'Connor*, for the appellant.

*A. D. Wales* and *Charles F. O'Brien*, for the respondent.

MERWIN, J.:

This action is brought to recover the expense of paving between
the defendant's railway tracks on Chenango street, in the city of
Binghamton, from the Erie Railway northerly to the north line of
the city.

The plaintiff was incorporated as a city by chapter 291 of the
Laws of 1867. By this act the mayor and common council were
made commissioners of highways, and given the general powers of
commissioners in towns. They were also given the power to regu-
late, pave, repair and improve the streets. It was, however, pro-
vided that before any paving should be ordered, it should be necessary
that two-thirds of all the owners of real estate fronting upon the
street to be paved, petition or consent that the same shall be done.
The expense of paving was directed to be assessed upon the owners,
in proportion to the number of feet frontage, except that when the
street was paved for the first time two-thirds only of the expense
should be assessed on the owners, and the remainder be paid from

the highway fund, and "such street or part of street shall, after such first payment as aforesaid, be kept in repair at the expense of the city."

The defendant was incorporated by chapter 501 of the Laws of 1868, passed May 1, 1868. By this act the defendant was authorized to construct and operate a railroad, with a double or single track, through and along certain streets and public roads of the city and town of Binghamton. One of the designated streets of the city was Chenango street. The mayor and common council of the city, and the proper authorities of the town, were "authorized and directed to grant permission to the company herein named, or their assigns, to construct, maintain, operate and use said railroads in, upon, and along the several streets and highways herein mentioned." It was further provided that the cars should be drawn by animal power, and "the tracks of the said railroad shall be laid flush with the surface of the said streets and highways, and shall conform to the grade as it now is, or shall be, from time to time, established or altered by the proper authorities in each case; and the said company and their assigns shall keep the surface of the said streets and highways within the rails, and for one foot outside thereof, and to the extent of the ties, in good and proper order and repair."

On the 21st of August, 1871, the common council of plaintiff granted the defendant authority as directed by the act.

Prior to January 2, 1872, the defendant, pursuant to the powers, rights and privileges granted it, constructed its tracks through Chenango, Court and Main streets, and has, at all times thereafter, run its cars over its track and operated a horse surface railway through those streets.

On the 2d of January, 1872, the common council of the plaintiff adopted an ordinance n relation to street railroads, which, in substance, provided that all street railroad companies, that should thereafter maintain railroads in any of the streets, should, under the direction of and as required by the common council, "improve, with such suitable material as the common council shall direct, and in a proper manner, between the rails, and shall keep the surface of the street inside the rails in good repair," and in default thereof the common council should have the right to cause the repairs to be

made, and assess the expense thereof upon the property of the company or sue for the same.

The charter of the plaintiff was revised by chapter 214 of the Laws of 1888. Under it, as so revised, paving could be ordered without first requiring the consent of any part of the abutting owners, and in all cases one-half the expense was to be assessed upon the owners according to extent of frontage, and it was provided that· "all repairs on said streets, or parts of streets, not including grading and paving or repaving, as aforesaid, shall be done at the expense of the city." (Title 7, § 13.)

On the 16th of April, 1889, the common council adopted the following resolution :

" *Whereas*, Persons owning a majority of the property fronting on Chenango street, in the city of Binghamton, N. Y., between the railway tracks and the north line of the city, have subscribed a petition asking this council to pave said street, between said points, with Trinidad asphalt pavement, with concrete foundation; now, therefore, be it

" *Resolved*, That we deem it for the best interest of said city, and the public good demands, that said street be paved with said pavement and foundation ; and be it further

" *Resolved*, That we will pave said street, from the railway tracks to the north line of said city, with Trinidad asphalt pavement, with concrete foundation, and that the city engineer and corporation counsel be and they are hereby directed to prepare proper specifications for said pavement and report the same to this council at the next meeting thereof; that the city clerk may prepare and give the necessary notice in the official paper for proposals to build said pavement."

On the 22d of April, 1889, plans and specifications were reported and adopted; advertisement for proposals was thereafter made, and on the 21st of May, 1889, the common council accepted the bid of the Warren-Scharf Paving Company to construct the pavement at two dollars and eighty cents per square yard. On the 11th of June, 1889, the council adopted a resolution directing the defendant to place its tracks on the established grade, " and that it pave within its tracks, and one foot on the outer side of said track, with Trinidad asphalt pavement, with a concrete foundation, accord-

ing to the specifications for the paving said street, from said points, which said specifications are now on file in the city clerk's office," to be completed within thirty days after the service on the company of a copy of the resolution. The resolution was duly served on the defendant, and it put its tracks on the grade, but refused at all times to fill between the tracks with asphalt pavement or pay for the same, but did offer to pave between the tracks with wooden blocks. The pavement was laid by the paving company under its contract with the city, and one-half the expense was paid by the abutting owners and the other half by the city. The street had not at any time prior thereto been paved. The expense of paving between the rails of defendant's tracks, at the rate of two dollars and eighty cents per square yard, was $5,181.12. This sum the common council assessed upon the defendant under the ordinance of 1872, but it has not been paid.

In the complaint the ordinance of January 2, 1872, is alleged as a foundation of liability against the defendant, and this position was apparently urged at the trial, but the referee held that the plaintiff could not base its claim on that ordinance. The correctness of this ruling is not here questioned by the counsel for the plaintiff, and it need not be further here considered. The referee, however, held that, under the provisions of chapter 501 of 1868, the defendant became obligated and bound itself to pave the surface of the street within the rails of its track, and for one foot outside thereof, and to the extent of the ties, when duly requested or directed by the proper authorities of the plaintiff, and in the manner and with the material designated and directed by such authorities. Upon this theory he ordered judgment for the amount claimed by plaintiff. The claim of the defendant is that the expression in the act of 1868, "in good and proper order and repair," does not include paving, and that it does not impose on defendant an obligation to reconstruct the surface of a portion of the street at the arbitrary will of the plaintiff.

There are many cases in which a distinction is recognized between paving and repairing. *In the Matter of Repaving Fulton Street* (29 How., 429), where Fulton street, in the city of Brooklyn, having then a cobble-stone pavement, was repaved with Belgian pavement, it was held that the work was not a repair of a street, and the expense chargeable to the city, but a local improvement, and, there-

fore, the subject of a local assessment. In *The State ex rel. The City of Kansas* v. *The Corrigan Consolidated Railway Company* (85 Mo., 263), the obligation on defendant was, that "the space between the rails of said track and the street for a space of two feet on either side and along the line of said track, * * * shall be kept and maintained in good repair by said railroad company." The street was then unpaved. The city authorities afterwards determined to pave the street with sandstone blocks, to be laid upon a foundation of concrete nine inches thick, and called upon the railway company to pave in that way between its tracks. It was held that the defend-ant was not liable, it being said that an obligation to repair a street is not an obligation to construct thereon a new pavement. A similar view was taken in *Mayor, etc., of Baltimore* v. *Scharf* (54 Md., 499, 525), where the obligation on the street railroad company was to keep its tracks and two feet on each side of it "in thorough repair," and the improvement was to repave with Belgian pavement in place of cobble-stone. In *Western Paving and Supply Company* v. *Citizens' Street Railway Company* (26 N. E. Rep., 188 ; S. C., 28 id., 88) the obligation was, that "the said company shall keep the tracks and two feet on the outside of each rail, together with all bridges, and the crossings of all gutters, at all times in good repair, to the satisfaction of the common council." It was held that the company could not be compelled to pay the expense of regrading with asphalt.

Upon the other hand, in *Middlesex Railroad Company* v. *Wake-field* (103 Mass., 261, 266), it is said that no sound distinction can be made between needful repairs and such improvements as are required by the public good. In *People ex rel. City of Detroit* v. *Fort Street and Elmwood Railway Company* (41 Mich., 413) it was assumed that a liability to keep "in good order and repair" included paving. And so it was in *Ridge Avenue Railway Company* v *Philadelphia* (124 Penn. St., 219) under an obligation to keep "in perpetual good repair." In *Huggans* v. *Riley* (125 N Y., 88) it was held that a commissioner of highways, under the power given him to repair highways, may build a new bridge when necessary to connect the two portions of a highway interrupted by an intersect-ing stream. This was placed on the theory that it was necessary in order to make the highway passable.

In the present case the liability was assumed in 1868 at a time when the road was not paved, and it may be assumed that since that time the use of the road has largely increased. The liability, however, upon the defendant to keep it in good and proper order and repair was continuing, and what would be necessary for that purpose would depend upon the situation at the time the performance of the covenant was called for. A condition of things may be imagined that would call for some kind of paving in order to reasonably perform the agreement. Whether a kind that would amount to a reconstruction of the street would, in any event, be within the agreement is a matter of some doubt. The necessity of such, to say the least, should be clearly made to appear.

The liability in question is somewhat similar to the liability upon a railroad company, under the general railroad act, to restore a street or highway that it uses to its former state or to such state as not unnecessarily to have impaired its usefulness. In such case the company is bound not only to restore the street to its former state, but to keep the portion used by it in a reasonable state of repair. Of such a liability Judge EARL says, in *Gilmore* v. *City of Utica* (121 N. Y., 572), "that certainly does not bind a railroad company, whenever the municipality shall resolve to pave or repave a street to conform its repairs to the absolute directions and requirements of the municipality."

In the case before us there is no finding or proof that, at the time the common council of the city ordered the asphalt pavement, the space in the street occupied by the defendant was not in good and proper order and repair, or that the pavement was necessary for the purpose of keeping the street in such a condition, except as it may be inferred from the act of the city authorities in directing the pavement. The question then arises whether such act in those respects binds the defendant, or is proof against it of any facts in controversy. The counsel for the plaintiff claims, in effect, that the resolution of the common council is presumptive evidence that the asphalt pavement was necessary and proper, and cites the case of *Tingue* v. *Village of Port Chester* (101 N. Y., 294). In that case it was simply held that in an action to restrain the sale of land for non-payment of an assessment for a local improvement and to set aside the assessment because of alleged invalidity in the proceedings, the burden is

on the plaintiff to establish the invalidity complained of. In *Mayor,. etc , of New York* v. *Second Avenue Railroad Company* (102 N. Y., 572), it was shown on the part of plaintiff that the street was out of repair, that the defendant after due notice neglected to put it in repair as required by its covenant, and thereupon the plaintiff proceeded to make the repairs at a certain cost for labor and materials, employing laborers at the usual wages and purchasing materials in the usual way. It was held that *prima facie* the amount expended was the measure of plaintiff's recovery. These cases do not help us here.

The rights of the defendant were obtained from the act of the legislature. The city authorities had no right to increase the burden on defendant. They were given the right to establish and alter the grade but were not given the right to say what materials the defendant should use, or to decide what was necessary for defendant to do. The defendant having accepted the grant and built its railroad, there existed between it and the people, represented, as we may here assume, by the plaintiff, an obligation in the nature of a contract. (*Commonwealth* v. *Proprietors of New Bedford Bridge*, 2 Gray, 339; *Chicago* v. *Sheldon*, 9 Wall, 50.) That being so, it is not in the province of either party by its own declaration to interpret the contract or fix the extent of the liability of the other. In the case cited from Gray, page 350, it is said: " The interpretation and construction of contracts, when drawn in question between the parties, belongs exclusively to the judicial department of the government. The legislature have no more power to construe their own contracts with their citizens than those which individuals make with each other." (See, also, *Cooke* v. *Boston and Lowell R. R.*, 133 Mass , 188; *State* v. *St. Paul, etc., Railway Co.*, 35 Minn., 138 , 3 Wood's Railway Law, § 491.)

But it may be suggested that the city authorities had absolute authority to pave the street and direct the kind of pavement. The same statute that gave this authority provided for the manner of the payment of the expense of such paving, and did not charge any part of it on the street railroad company. The obligation of the defendant was not in any manner affected. It still continued liable to keep the portion of the street used by it in good and proper order and repair. So it was the duty of the common council, as commis-

sioners of highways, to see.to it that the streets were in proper repair, and the city was chargeable with the expense. This did not give them power to say what the defendant should reasonably have done in order to perform its agreement. (*Cooke* v. *Boston and Lowell R. R.*, 133 Mass., 188; 2 Wood's Railway Law, 976, § 271.) In *United States* v. *Ross* (92 U. S. Rep., 281), it is said that the presumption that public officers have done their duty does not supply proof of independent and substantive facts.

It follows that the defendant is not bound by the determination of the plaintiff's common council that an asphalt pavement should be laid. Such determination does not, as against the defendant, presumptively prove the necessity of such pavement. The plaintiff here seeks to recover damages for the non-fulfillment by defendant of its agreement. It is, therefore, incumbent on plaintiff to show, according to the ordinary rules of evidence, breach of such agreement and what expense has by reason thereof been incurred by it that was reasonably necessary. Neither of these things are shown. The plaintiff cannot by its own declaration determine the fact of breach, and cannot arbitrarily fix the method of repair.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment reversed and a new trial ordered, costs to abide the event.