———o———

No. 6209.

## GEORGE K. PRATT vs. CENTENNIAL REALTY COMPANY, LIMITED.

### Syllabus.

The franchise of the Street Railroad Company obligates it to "Keep in good order and repair" all that portion of the street between its tracks, besides 18 inches on either side. Upon the petition of the property owners the city removed entirely all the square block pavement existing at the time the franchise to the railroad company was granted and replaced it with Belgian blocks pavement. Held: That inasmuch as the railroad company, under its contract, could not have been required to do the new paving, it could not therefore be made to pay for the cost of it.

Appeal from the Civil District Court for the Parish of Orleans, Division "E," No. 104,928. Honorable G. H. Theard, Judge.

Howe, Fenner, Spencer & Cocke, for plaintiff and appellant.

Solomon Wolff, for defendant and appellee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Magazine Street was paved with square blocks from curb to curb. In 1906 the following petition was addressed to the City Council:

— 76 —

"We, the undersigned property owners on Magazine Street between 'Canal Street and Julia Street, desiring to avail ourselves of the privilege conferred by Act 45 of the General Assembly of the State of Louisiana, Session of 1896, as amended and re-enacted by Act 215 of the General Assembly of the State of Louisiana, Session of 1902, do respectfully petition your Honorable body to re-pave the said street, within the said limits with the existing large square block stones, relaying and re-setting existing banquette stone curb where required and constructing granite block gutter bottoms, employing small granite black stone pavement between the street car track rails and for about 18 inches outside of each rail, and installing a system of sub-surface drainage. The cost of the curbs, gutter bottoms, and pavements to be borne by the abutting property owners and the city, as provided by law, but the cost of subsurface drains to be entirely borne by the City of New Orleans."

This petition was signed by the defendant herein.

After the usual proceedings the petition of the property owners was granted, the contract for doing this paving contemplated by the petition was given out, the work was done and a certificate was issued against each property owner for his share of the cost signed by the proper city officials. The share of cost assessed against the defendant was $230.38 and the certificate therefor was acquired by plaintiff.

The defendant refused to pay. He was sued and for defense averred that:

"The franchise for the running of the street railroad on Magazine Street was conferred by the City of New Orleans on the New Orleans City and Lake Railroad Co., and its assigns, on the express con-

— 77 —

dition that 'the purchaser or his assigns shall, during the continuance of the franchise, keep in good order and repair all streets through which these lines run, between the rails and for one foot on each side of said rail;' that it is not liable for so much of the paving as was done between the car tracks and one foot on each side thereof on Magazine Street in front of the property of your respondent.''

The Judge of the lower Court sustained the defense and the plaintiff has appealed.

The question for solution is: Could the railroad company be bound, under the terms of its contract, to ''keep in good order and repair all streets'' have been required by the City of New Orleans to take up and remove all the square blocks between its tracks and for 18 inches on each side and to replace the same with Belgian blocks resting upon a concrete foundation six inches thick?

We think not. To keep in good order and repair means to partially remove paving that may not be in good order and to replace it with the same or similar material; but it cannot mean to remove the paving entirely and to replace it with a new and different and more costly material constituting a different and improved system of paving, in other words to substitute a Belgian block pavement to what is known as a square block pavement. The signers of the petition addressed to the council well understood themselves that what they were asking the council to do was not to put the street in good order and repair; they petitioned the council to repave the street under Acts of 1896 and 1902. Section 98 of the acts provides for the repaving of streets already paved. The signers of the petition further knew that the whole cost of the pavement was to be paid by them because this same section provides further that ''the entire cost of

— 78 —

the said new street pavement shall be borne by the own- ers of said real property fronting on said new pavement, the entire cost of intersections to be paid by the City." The same petition states, "the cost of the pavements to be borne by the abutting property owners and the City as provided by law."

When the contract obligated the railroad to keep in good order and repair, the word "repair" was explanatory of what "good order" was intended to mean, it was limitative and restrictive to "repair" only, and not to "repave."

A serious question might perhaps have arisen if the claim had been made that removing and relaying the square blocks constituted a repair. But we are convinced that the substitution of the Belgian blocks to the granite blocks was a reconstruction as described in **State vs. Railroad, 52 A., 1570,** for which the railroad was not liable.

The removal and relaying of the granite blocks cost $1.35 a yard, while the removal of the square block and laying down of the Belgian block cast $4.75 a square.

In **Chicago vs. Sheldon, 9 Wall (76 U. S., 76)** the Supreme Court held that a company bound by its contract to keep the street along its tracks in good repair and condition was not liable to pay for paving the street with an entirely new pavement.

In the case of **Mayor of Baltimore vs. Scharf, 54 Md., 499,** the railroad was obliged to keep its tracks in thorough repair. Held: "Their obligation is to keep in repair, not to repave with new and different material, and perhaps more costly."

In the case of **State vs. Mayor of Patterson (New Jersey) 50 Atl. Rep., 620,** the obligation was "to keep the

street within the rails in good and sufficient repair."
The street was macadamised and had become worn out.
The city repaved with bricks and attempted to collect
the cost from the railroad. Held, that an obligation to
repair does not mean to repave, quoting 4 Am. & Eng. R.
Cases, 174; 80 Mo., 379; 35 Atl., 718; 61 Hun., 479; 16 N.
Y. Supp., 225; 23 Am. & Eng. Enc. Law, 889, Note 1.

An obligation to maintain the street and keep it in
good repair does not mean to reconstruct it. 85 Mo.,
263. This Court made the same ruling in the case of
**Whitney Bank vs. Byrnes Realty Co., No. 6023.**

**C. C., 1946 (1941).** The words of a contract are to be
understood like those of a law, in the common and usual
signification, without attending so much to grammati-
cal rules as to general and popular use.

In case of doubt the conclusion must be "**in favorem
solutionis,**" in the sense the least onerous to the obligor.

2 R., 122; 5 R., 75; 12 R., 123; 4 M., 575; 42 A.,
550, 782.

The obligation of the city was to keep in order and re-
pair its streets. It was evidently its intention to relieve
itself of this burden by having the railroad to assume it.
The stipulation was in favor of the City alone.

In construing the obligations of a city railroad to keep
the street in proper condition, the Supreme Court of this
State in **State vs. Railroad, 42 A., 550,** said that when the
terms of contract are obscure or equivocal the conten-
tion most favorably to the obligor should be adopted.

In **Parish of Ouchita vs. City, 42 A., 782,** the Court said
that to permit the city to erect a new building under au-
thority to "repair" would be a "perversion" of the
meaning of the word "repair."

The defendant, however, contends that the words "to keep in good order and repair" have been construed to mean pave or repave when deemed necessary or when ordered by the city.

In **City of Philadelphia vs. Ridge Ave., 143 Pa. St., 444, 22 Atl. 695 (891)**, the ordinance provided that "all railroad companies shall be at the entire cost and expense of maintaining paving, repairing and repaving, etc.

In **Borough vs. McKeesport, 27 Atl., 1006, and 1893; 158 Pa., 447,** the ordinance required "in case of a change of grade or improvement of any of the streets that said railway be charged to conform to said grade or improvement."

In **City of Reading vs. United Traction Co., 52, 1902,** the contract was that the company "pave its right of way and keep the same in good repair." Under that clause the company was held bound to change the pavement between its tracks to conform to a better one laid by the City upon the balance of the streets. The reverse of the conditions here.

But in the **City of Philadelphia vs. Hestorville, 35 Atl., 718, 177 Pa. St., 371,** the Court said:

> "A provision in the charter of the street railway that it shall keep in perpetual good repair at its own expense, the streets on which its tracks are located, does not render it liable for the cost of repaving such street with a new, different and more costly material."

It will be noted that all these are Pennsylvania cases.

In the **Mayor of New York vs. Harlem Bridge Co., 78 N. E., 1072, 186 N. Y., 304 (1906)** it was squarely held

that the obligation to keep in good and proper order and repair involved the duty to pave, repave, and even lay a new and different and more expensive pavement. It must be noticed, however, that in all the above cases the repavement had been ordered by the city, and not petitioned for by the property owners.

· We prefer, however, to rest our opinion upon the authorities first above quoted which make a distinction between repairs and repaving as more in consonance with reasonable interpretation and our own system of laws.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be amended and accordingly that the plaintiff herein, George K. Pratt, have judgment against the defendant for the sum of two hundred and thirty 35/100 dollars with five per cent per annum interest from April 5th, 1909 till paid, with privilege upon the property described in the petition herein, and the cost in both Courts.

Judgment amended and affirmed.

Opinion and decree, November 23, 1914.

. Rehearing refused, December 21st, 1914.

Writ denied, January 27, 1915.