THE DRY DOCK, EAST BROADWAY AND BATTERY RAILROAD
COMPANY *vs.* THE MAYOR &c. OF THE CITY OF NEW YORK
and others.

The provision contained in the 4th section of the act of the legislature char-
tering the plaintiff's company, which prohibits the mayor, common council
&c. of the city of New York from doing "any other act to hinder, delay
or obstruct the operation" of the railroad authorized by said act to be
constructed, (*Laws of* 1860, *ch.* 512,) is to be so construed as to prohibit
the city corporation from obstructing the operation of the railroad by any
act, the sole purpose of which is thus to obstruct it; but not so as to pre-
vent the city corporation from completing a general plan for the sewerage
of the city, and from constructing sewers in accordance with such plan.
CARDOZO, J., dissented.

When the legislature, in 1865, passed an act authorizing the city corpora-
tion to adopt a general plan for the sewerage of the city, and to construct
sewers in accordance therewith, (*Laws of* 1865, *ch.* 381,) it may be safely
inferred that they intended to withdraw any obstacles to the work which any
prior law permitted. *Lex posterior derogat priori.*

Even though the necessary work of completing such plan of sewerage should
temporarily suspend the running of the plaintiff's rail cars, the prohibitory
language of the act of 1860 ought not to prevent the city corporation
from constructing a sewer; upon the principle that "The law would rather
tolerate a private loss than a public evil."

THIS is an appeal from an order denying the defend-
ants' motion to dissolve an injunction. The motion
was, upon the complaint, answer and affidavits, to dis-
solve an injunction granted herein, on the 19th day of
June, 1869, restraining the defendants from proceeding
with the construction of certain sewers in the city of
New York.

The plaintiffs allege that they are engaged in the opera-
tion of a railroad in certain streets of the city, under sev-
eral legislative grants, and that among other streets in
which they are so operating such railroad are Grand and
Clinton streets, and avenue B. The complaint also charges
that the defendants, by their Croton Aqueduct Board,
threaten and are about to construct sewers in certain por-

tions of said streets occupied by the plaintiffs, and that such construction of the sewers will interfere with the operation of the plaintiffs' road, and work the plaintiffs irreparable injury.

The answer denies all the material allegations of the complaint, except the allegations as to the construction of the sewers, and charges that said sewers were ordered by the Croton Aqueduct Board, in pursuance of the authority conferred by, and in accordance with the requirements of chapter 381 of the laws of 1865. Twenty days' notice was given to the plaintiffs of the intention to construct the sewers, and they were requested to remove their tracks on either side of the street, so as to afford the contractor facilities for excavating the trench of the sewer.

*Richard O'Gorman* and *W. C. Trull*, for the appellants. I. The motion to dissolve the injunction should have been granted. Until the passage of the act of 1865, the power of constructing sewers in the city of New York was possessed and exercised by the mayor, aldermen and commonalty of the city of New York. (*Valentine's Laws*, page 1190, § 175.) The power thus conferred upon the corporation was absolute. By the act of 1865 the Croton Aqueduct Board was authorized to devise a plan of sewerage for the entire city, and to construct the sewers in accordance with the plans so devised. (*Laws of 1865, ch. 381, p. 717.*) A reference to the provisions of this act of 1865 will disclose that it was the intention of the legislature to provide a complete system of sewerage and drainage for the entire city. It was under and in pursuance of the powers conferred by this act that the Croton Aqueduct Board commenced and continued the construction of the sewers in question. The plaintiffs contend that this work thus authorized by statute, and actually commenced, should be enjoined, for the reason that the con-

struction of the sewers will obstruct the operation of their railroad, in violation of the prohibition contained in the act of 1860. The act of 1860 provides : " The mayor, common council, and the several officers of the corporation of the said city of New York, and the said corporation are hereby prohibited   *   *   *   from doing any other act to hinder, delay or obstruct the operation of said railroad, as herein authorized." (*Laws of* 1860, *ch.* 512, *p.* 1041, § 4.) This claim of the plaintiffs cannot and ought not to be sustained.  1. The grant to the plaintiffs simply authorizes the plaintiffs to construct and operate their road in the streets named.  It does not specify any particular portion of the streets upon which the road shall be so constructed and operated.  The plaintiffs are therefore free to remove their tracks to any portion of the streets included within their grant, whenever necessity or the interests of the public shall require such removal.  It appears by the answer of the defendants, and the affidavit of the engineer Weston, and is not denied, that it is entirely practicable for the defendants to continue the operation of the road at the points where the sewers are being constructed, during such construction, by simply removing their tracks from the center to either side of the streets at those points.  Upon the merits, therefore, independent of the legal question involved, the defendants are not entitled to this injunction.  2. The true construction of the prohibition contained in the fourth section of the act of 1860 is, that it prohibits the defendants from making any factious opposition to the construction of the plaintiffs' road, and from obstructing its operation by any act of theirs, the sole purpose of which was thus to obstruct it, and not that the prohibition was intended to prevent the defendants from initiating and carrying out great public improvements, intended for the relief of the necessities and the protection of the health of the citizens.  The construction of sewers in the city of New York is required

Dry Dock &c. Railroad Company *v.* The Mayor &c. of New York.

alike by the health and convenience of the citizens.   The
sewers of the city of New York furnish the means by
which the refuse and garbage of the streets and houses
are carried from the city.   They are the great protection
from disease and pestilence.   The legislature, therefore,
wisely provided for a general and systematic plan for their
construction.   It was in pursuance of the plan thus pro-
vided that the sewers in question were being built, and the
claim of the plaintiffs that they can interfere, at the risk of
the public convenience and the public health, and prevent
the construction of sewers whenever such construction
temporarily inconveniences them, is at once bold and im-
pudent.   No reasonable interpretation of the prohibition
contained in the act of 1860 will sustain such claim.   It
never was intended by that provision to deprive the de-
fendants of the power of constructing sewers, and carrying
out other public and necessary improvements.   The pro-
vision was only intended to protect the plaintiffs from
direct and positive interference by the defendants or their
officers; an interference having for its sole object the ob-
struction of the operation of the plaintiffs' road, an inter-
ference which, as in this case, is only consequential upon
the exercise by the defendants of their power to institute
and carry out great and necessary public improvements, is
not within either the spirit or letter of the prohibition.
If it is, and the injunction in this case sustained, then
there is not a street used by the plaintiffs which can either
be paved, sewered or graded.   The plaintiffs' road will thus
be constituted an insuperable barrier and obstacle to all
public improvements which may ever temporarily interfere
with the operation of their road, and that, too, without
any regard to the health, convenience or necessities of the
inhabitants of the city.   It is certain that no sewer can be
constructed in the streets in question, unless constructed
in the manner in which the one whose construction is re-
strained was about to be built.   (*Laws of* 1865, *ch.* 381,

§§ 4, 8.) The plan for this sewer has been devised and completed. The sections of the act above cited declare that it shall be the permanent plan, and that no sewer shall be constructed except in accordance with such plan. (*Id.* §§ 2, 8.) It must be conceded that no citizen of the city could thus interfere, however great the inconvenience he might suffer or the damage he might sustain. (*Radcliffe* v. *The Mayor &c.,* 4 *N. Y. Rep.* 195, *and cases cited by Bronson, J., p.* 204. *Chapman* v. *Albany and Schen. Railroad,* 10 *Barb.* 360. *Williams* v. *N. Y. Central Railroad,* 18 *id.* 222. *Wilson* v. *The Mayor &c.,* 1 *Denio,* 595.) The citizens of the city and the plaintiffs hold and enjoy their property and privileges subject to the exercise of the legitimate powers of the municipal government and the departments thereof. There is probably no public improvement but that, during its prosecution, occasions temporary inconvenience, and, it may be, actual damage and loss to some of the inhabitants of the city; but this circumstance furnishes no right to the person thus suffering to interfere with or prevent the carrying out of the improvements, nor, as has already been shown, where the damage is consequential, even to a claim for damage. In such case the convenience and interest of the citizen must yield to that of the public.

II. Conceding that the construction of the sewers in question would be a violation of the prohibition contained in the act of 1860, still the order below should be reversed. The acts complained of were, at most, a trespass. No principle is better settled than that an injunction will not lie to restrain a trespass. The plaintiffs' papers show that the damages resulting to them is subject to computation and moneyed compensation. Such being the case, those damages could clearly be recovered by action. In such case the complaining party is ever left to his action at law for damages. (*Thompson* v. *Matthews,* 2 *Edw.* 212. *Hudson and Del. Canal Co.* v. *N. Y. and Erie Railroad,* 9 *Paige,*

323. *Williams* v. *N. Y. Central Railroad*, 18 *Barb*. 222. *Ely* v. *City of Rochester*, 26 *id*. 133.)

III. The case fails to show that the defendants are doing or suffering any act to the injury of the plaintiffs. The defendants have no power to construct sewers. In 1865 the power formerly possessed by the defendants was transferred to the Croton Aqueduct Board. (*Laws of* 1865, *supra*.) The effect of this act was to deprive the defendants of all jurisdiction in the construction of sewers. The Croton Aqueduct Board, in exercising the powers conferred by this act, do not act as officers or agents of the defendants. The power and discretion conferred upon that board is absolute, and entirely independent of the defendants' control. In the exercise of the powers conferred on the Croton board, they act as independent public officers, and not as officers of the corporation. The duties they discharge in devising plans and constructing sewers are statutory, and constitute the members of the board public, not corporate, officers. Such being the character and position of the board, with reference to the power conferred by the act of 1865, it is clear that this case is not within the prohibition upon which the plaintiffs rely, as that prohibition is confined to the acts of the "mayor, common council and the several officers of the city of New York." (*Laws of* 1860, *supra*.)

IV. The order appealed from should be reversed, and the injunction dissolved.

*Robinson & Scribner*, for the respondents. The plaintiffs, owners of the railroad, authorized and granted by chap. 512 of the Laws of 1860, entitled "An act to authorize the construction of a railroad in Avenue D, East Broadway, and other streets and avenues of the city of New York," passed April 17, 1860, seek to restrain the defendants "from hindering, delaying and obstructing the operation of their railroad," as authorized by that act.

I. It is not pretended that the acts complained of will not have the effect to produce this result. Nor that the effect of the acts which the defendants seek to justify is trivial or of no considerable extent, so that the maxim *"De minimis non curat lex"* could apply to them. For an injury to rights in the nature of incorporeal hereditaments, an action may be maintained, " though the injury done amounts only to a farthing." (*Pindar* v. *Wadsworth,* 2 *East,* 154.) And the protection of franchises of this public character, by injunction, from being interfered with, is within the peculiar province of a court of equity. (1 *John. Ch.* 611. 5 *id.* 111. 9 *John.* 539.) The words of the statute (*Laws of* 1860, *ch.* 512, *p.* 1041, § 3) are positive and peremptory. " The mayor, common council, and the several officers of the corporation of the city of New York, and the said corporation are hereby prohibited from * * doing any other act to hinder, delay or obstruct the construction or operation of said railroad, as herein authorized. And it is made the duty of the said mayor, common council and other officers, to do such acts within their respective departments as may be needful to promote the construction and protect the operation of said railroad, as provided in this law. Any act or thing done in violation hereof shall be inoperative and void ;" and by section 4, all provisions of law inconsistent with the act were repealed. (*Bridge Proprietors* v. *Hoboken Co.,* 1 *Wall.* 116. *Binghampton Bridge case,* 3 *id.* 51.) The general railroad act (§ 41) also enacts that any person who shall willfully do any act whereby the railroad shall be stopped, obstructed, impaired, weakened, injured or destroyed, " shall be guilty of a misdemeanor, and shall forfeit and pay treble damages." By 2 *R. S.* 696, § 38, where any duty is enjoined by law upon any public officer, or upon any person holding any public trust or employment, every willful neglect to perform such duty, where no special provision shall have been made for the punishment of such delinquency, shall

be a misdemeanor. And by section 39, where the performance of any act is prohibited by any statute, and no penalty is specially imposed, "the doing such act shall be deemed a misdemeanor," punishable "by imprisonment in a county jail, not exceeding one year; or by fine, not exceeding two hundred and fifty dollars; or by both such fine and imprisonment." The power to construct sewers in the city of New York is vested in one of the departments of the corporation, styled "The Croton Aqueduct Board," by the charter of 1857. (*Sess. Laws of* 1857, *ch.* 446, § 24. *See also Act of* 1849, *ch.* 383.) This board still acts for and on behalf of the corporation. (*Laws of* 1865, *ch.* 285, § 1.)

As to the intention of the legislature in the enactment of the provisions of section 3 of chapter 512 of the Laws of 1860, as evidenced by the terms used, it would seem there was no room for question. (31 *N. Y. Rep.* 289. 45 *Barb.* 283. *Id.* 218.) 1. All previous powers given to the corporation by statute were to this extent modified, abridged and regulated in express terms. 2. All the authority in the law-making power was exercised to prohibit any acts tending "to hinder, delay or obstruct the operation" of this road, and declare them void; and enjoins upon these officers the duty of promoting the construction and operation of this railroad. 3. In the provisions of the act of 1860, the legislature had in consideration the existing powers of the corporation, and make direct and express reference to them. The language used is plain and unambiguous, and leaves no room for doubt that any such interference as would, to any material extent, hinder, delay, or obstruct the operation of this road was interdicted. The power conferred on the corporation and the plaintiffs were both given for public purposes, and in accordance with the judgment and discretion of the legislature. It was for it alone to weigh the amount of public benefit that might result from a distribution or discrimination in

favor of the one or the other. It would be difficult to hold that the running of a railroad carrying forty thousand passengers a day, is not to be regarded as an object of at least equal public necessity and consideration as the building of a sewer.

II. The acts complained of hinder, delay and obstruct " the operation of the railroad." As a fact this cannot be denied. They are not accidental, nor trivial, or unsubstantial. They involve the defendants in the trouble and expense of removing and relaying tracks exceeding three thousand five hundred dollars, and compel them to suspend and discontinue for a long time *one* of their tracks, (where the act of 1860 requires them to lay and use *two*,) and they create various other impediments or obstructions to their operating their road with their usual and ordinary celerity and effectiveness.

III. All this annoyance, interference and entailment of trouble, loss and expense, the defendants propose, arbitrarily and dictatorially, to impose upon the plaintiffs, as matter of right, and to adopt a plan of sewers, which renders it impossible not to hinder and interrupt the use of the said railroad track. Holding themselves superior to the law prohibiting such acts, they seek to justify them under some alleged necessity arising out of their statutory powers, and to their due and proper exercise, which necessity they have themselves created. It is sufficient answer to this claim to say, all such claims to create such a necessity might possibly be maintained, had the grant of the plaintiffs' franchise been made subject to existing laws conferring such powers; but in this grant the legislature deemed it necessary to protect and give superior protection to the railroad, and to repeal all acts authorizing any such interference, and expressly prohibited the same.

IV. The motion to dissolve this injunction could only prevail, if the case showed the acts enjoined against did not " hinder, delay or obstruct the operation of the plain-

tiffs' road." As matter of fact, the contrary appears by the answer to be a necessary consequence of the defendants' acts. 1. If deemed to be in any respect denied by the answer, it is a controverted fact which ought to abide the trial. 2. The affirmative is positively sworn to by the complaint and the affidavits supporting it. No facts in denial are sworn to by any one cognizant of them. 3. The affidavits of Melendy, C. E., and Nelson Dow, trackmaster, show the allegations in the complaint are true.

V. The order denying the motion to dissolve the injunction should be affirmed, with costs.

*By the Court,* CLERKE, P. J. The question involved in this motion is, whether a prohibition, contained in an act of the legislature, passed in 1860, shall be so construed as to prevent the defendants from completing a plan for the sewerage of the city, and from constructing the sewers in accordance with this plan. This plan, so exceedingly important to the health and convenience of the citizens, was sanctioned by the legislature, by an act passed in 1865—five years after the act containing the alleged prohibition.

I. The language, to authorize the court to give effect to this alleged prohibition, should be very clear and specific. To compel the municipal government of this city to suspend or abandon its operations in endeavoring to complete a scheme carefully devised for performing one of its most important functions, can be only sanctioned by the express command of the supreme legislative power. The act of 1860 provides that "The mayor, common council and the several officers of the corporation of the said city of New York, and the said corporation, are hereby prohibited &c. from doing any other act to hinder, delay or obstruct the operation of said railroad as herein authorized." Even if the necessary work, in completing this great plan of sewerage for the city, temporarily sus-

pended the running of the plaintiffs' rail cars, this prohibitory language ought not to prevent the defendants from doing so. It is a cherished maxim that "The law would rather tolerate a private loss than a public evil." (*Coke Litt.* 152, *b.*) And, although it would be a public inconvenience to suspend travel even temporarily on the plaintiffs' railroad, it would be trivial, compared with the evil and the danger which would be the consequence of stopping this great sanitary undertaking.

II. I think another maxim of the law may be applied to this case. *Lex posterior derogat priori.* When the legislature, in 1865, passed an act allowing the defendants to construct and complete this plan of sewerage, it may be safely inferred that they intended to withdraw any obstacles to the work which any prior law permitted.

III. But I agree with the defendants' counsel, that the true construction of the prohibition contained in the 4th section of the act of 1860 is, that it prohibits the defendants from obstructing the operation of the plaintiffs' railroad by any act, the sole purpose of which was thus to obstruct it, and not that the prohibition was intended to prevent the defendants from initiating and carrying out great public improvements, intended for the relief of the necessities and the protection of the health of the citizens. Besides, it appears that it is entirely practicable for the plaintiffs to continue the operation of the road at the points where the sewers are in the course of being constructed, by removing the tracks from the center to either side of the streets, at those points. So that, the truth is the plaintiffs are seeking to avoid comparatively trivial trouble and inconvenience by stopping the prosecution of a work which, beyond all question, will be of the highest possible advantage to the inhabitants of this city.

The order should be reversed, with costs, and the injunction dissolved.

Dry Dock &c. Railroad Company *v.* The Mayor &c. of New York.

CARDOZO, J., (dissenting.) The plain intent of the statute of 1860, creating the plaintiffs, was to protect them not only in the construction of their road, but also in its "operation;" and accordingly it not only prohibits the city from doing any act to hinder, delay or obstruct the construction, but also the operation of the railroad; and it makes it incumbent upon the city authorities to do such acts as may be needful to promote the construction and to *protect* the *operation* of the road.

The convenience of the road for travel was a great public benefit, and the legislature meant to secure its uninterrupted use by the citizens. It is no answer to say that the building of sewers is also beneficial to the public, and necessary to the health of the city, which of course is of paramount importance; because it does not appear but that the sewer may be built without interfering with the plaintiffs at all. That the defendants have seen fit to get from the legislature an act which requires them to make a general plan for sewers in sewerage districts, does not affect the case, for they need not adopt, unless they choose, such a plan as will interfere with the plaintiffs; or if they have done so, they can apply to the legislature for relief so as to enable them to change that plan.

The plaintiffs having exhausted their right to lay their track, cannot lawfully remove it to any other part of the street, and it should not be suggested that they ought to be trespassers and wrongdoers even for a brief period; or that the public should be inconvenienced by having travel on the road suspended, when all that the defendants need do to have both of these desirable public benefits coexist, is to conform the plan of the sewerage district to the necessity of the case.

I think the order should be affirmed.

Order reversed.

[NEW YORK GENERAL TERM, November 1, 1869. *Clerke, Sutherland* and *Cardozo,* Justices.]