### BROOKLYN EL. R. CO. v. CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department.   February 18, 1896.)

ELEVATED RAILROAD — EXPENSE CAUSED BY STREET IMPROVEMENT.

   Expense of protecting an elevated railroad from settling by reason of construction in the street of a sewer must be borne by the railroad, its grant being subject to the right of the public to use the street for all proper and ordinary purposes.

Submission of a controversy between the Brooklyn Elevated Railroad Company, as plaintiff, and the city of Brooklyn, as defendant, on an agreed statement of facts, pursuant to Code Civ. Proc. § 1279. Judgment for defendant.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Hoadly, Lauterbach & Johnson, for plaintiff.
Albert G. McDonald, for defendant.

CULLEN, J.   The defendant, the city of Brooklyn, constructed a sewer through Marcy and other avenues which intersect Lexington avenue, upon which latter street plaintiff maintains an elevated railroad.   The contract of the defendant for the construction of the sewer provided that the contractor should support the sides of the excavation with suitable plank and shoring.   In the progress of the work this requirement was complied with, but, on account of the proximity of plaintiff's structure to the excavation for the sewer, proper regard for the safety of the traveling public, to guard against the possibility of the structure settling, rendered it necessary to shore up the elevated structure itself.   By an arrangement between the parties, this work was done by the plaintiff, the question of upon whom the expense of the work properly rested being left to the subsequent determination of the courts.   The question of who should pay this expenditure is the one presented on this submission.

We do not think it necessary, even if it were possible, to define or name the exact character of the right or estate acquired by the plaintiff in the public streets through which its road is constructed. In the case of People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, it is stated that the right acquired by the street railroad in that case was a fee. If the term "fee" is to be construed as referring to the land itself on which the structure is erected, it can hardly be applicable to the case of the present plaintiff, for in the streets of the city of Brooklyn the public acquire merely an easement;   the fee of the property remains in the original owners.   Also, under the elevated railroads

run surface railroads, and the rights of the latter are as great as those of the former.    These roads, too, would have a fee in the street.    Thus, it would be possible to have several estates in fee in the same piece of land.    We think, however, that the term "fee" is to be applied to the franchise which the railroad company obtains to construct and operate its railroad.    We therefore concede the claim of the plaintiff that its right to maintain its railroad, as against the public, is as great as any obtained by the railroad companies in New York, and that its franchise cannot be abrogated or destroyed by the public authorities without compensation.

But though the city cannot derogate from the grant made by the state, and by it to the plaintiff, the question still remains, what are the limits and conditions of that grant, and how is that grant to be construed?    As already stated, we are not dealing with ordinary estates or easements in a piece of real property, nor are we dealing with the construction of a deed the phraseology of which is in well-defined legal terms.    The franchise of the plaintiff proceeded from an act of the legislature and the action of the city authorities under it.    As the public had already acquired a property right in the street, to wit, an easement or right of passage, the plaintiff probably also acquired a certain portion of that public easement, although it remained liable to make compensation to the owner of the fee. The statute under which the plaintiff's road is constructed authorizes it to construct and maintain an elevated railroad upon the street.    Now, this statute did not contemplate the abandonment of the street or the easement of way in it by the public.    On the contrary, the value of plaintiff's franchise would largely depend on the fact that the street was to be kept open and maintained as a public highway.    The plaintiff's road was to be essentially a street railroad, and therein lay its great profit.    But, if it was contemplated that the route of the railroad should still remain a public street, it must have been equally contemplated that the public should enter upon it for the purpose of exercising those urban easements which it possesses in city streets, such as the right to lay and construct sewers, water mains, etc.    Any grant to the plaintiff must necessarily be construed as subject to the right of the public to enter upon the street for such purposes, and any interference with the plaintiff's road, in the proper construction of such work, must be considered a burden which plaintiff assumed to bear.    It would be most unreasonable to suppose that the city, knowing that, from time to time, it would have to tear up the street and make excavations therein, should make a grant to the plaintiff, the effect of which would be to subject the city to increased expense in such improvements.    In the case at bar, the physical, tangible property of the plaintiff was not injured or taken.    At most, it lost the right of the support of its structure by adjacent land not owned by it. As against an adjacent private owner, the plaintiff, having placed a structure on its land, would have no right to the support of the adjacent land, except so far as it is protected by the charter provisions as to depth of excavations (provisions which have no applica-

tion to this case). If the railroad of the plaintiff lay outside of the street, the damage it might sustain from grading the street or the city's entry thereon would be damnum absque injuria. Radcliff's Ex'rs v. Mayor, etc., of Brooklyn, 4 N. Y. 195; Bellinger v. Railroad Co., 23 N. Y. 42. It is therefore doubtful whether, even assuming that plaintiff was absolute owner, not only of its roadway, but of the land which it spanned, it would, as a matter of technical law, have any valid claim against the defendant. But we prefer to rest our decision upon the other ground that grants to railroads or other corporations in public highways must be construed as subject to the paramount right of the public to use those highways for all proper purposes. We do not say that there might not be a use of a street by the public of such a character as to destroy, practically, the plaintiff's franchise and property, and so far unforeseen at the time of the grant as to require compensation to the plaintiff for the injury to or destruction of its property and franchises. But such uses of the public street as were notorious and of common exercise at the time of the grant must have been contemplated by all parties, and any grant must be held subject to such uses of the street as would be naturally contemplated. This rule is in accordance with the uniform line of authorities, though few authorities are to be found on the subject. In the case of Dry-Dock, E. B. & B. R. Co. v. Mayor, etc., of New York, 55 Barb. 298, it was held that the city was justified in interfering with the street railroad by the construction of a sewer. The same doctrine was held in Kirby v. Railway Co., 48 Md. 168; and the general principle is stated in Booth, St. Ry. Law, § 42, and in Elliott, Roads & St. 367. It has been the uniform course in this city and in New York that the street-railroad companies bore whatever expense was entailed by the interference of street improvements with their railroad tracks. The case of Manhattan Ry. Co. v. City of New York, 89 Hun, 429, 35 N. Y. Supp. 505, is not in conflict with the views here expressed. In that case, in addition to maintaining the street, the defendant constructed a viaduct, which viaduct destroyed part of the plaintiff's station. For the expense of cutting down the station to enable the viaduct to pass over it, the defendant was held liable. This liability appears to have been ultimately placed on the ground that the statute of 1853, authorizing the laying out of public highways over railroads, did not authorize the construction of a viaduct through the station. We would be inclined to concur in the decision there made, even on the ground first discussed, that the property of the plaintiff could not be destroyed by the city without compensation, apart from the question of the interpretation of the statute; but such a rule has no application here. The improvement which the city of New York sought to make in the case cited was not only physically destructive of the plaintiff's property, but was one plainly not within the contemplation of the parties when the grant to the railroad company was made. In these respects it entirely differs from the present case.

There should be judgment for the defendant on submitted case, with costs. All concur.