JOHN J. CREEM COMPANY, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

Second Department, June 6, 1919.

**Municipal corporations — construction of trunk sewer in street duty of contractor as to repairing street after work is completed — duty of railway company as to repair of street — duty of contractor as to sewer connections.**

A contractor who constructs a trunk sewer in a city street may be required to assume the cost of restoring the pavement outside the railroad area to a good condition, although the pavement was in a state of disrepair when the work was commenced.

In such case the contractor may also be required to pay the expense of making sewer connections.

A contract between a company constructing a sewer and a city contained a clause that the contractor would be responsible should anything be

Second Department, June, 1919.          [Vol. 188.

" removed, destroyed, or injured by the construction of the sewer and its appurtenances," and a clause " or which may be injured by traffic." In an action to recover a sum of money withheld for repairing pavement within the railroad area, *held*, that plaintiff's contention that these clauses were limited by the clause " on account of any act or omission on the part of the Contractor, his agents, servants or employees, in the prosecution of the work," should be sustained.

A municipal corporation is not obliged to repair pavement within the street railroad area, which has been disturbed by a sewer contractor, and cannot withhold from such contractor any money due him to make such repairs.

Where a street railroad company's tracks and the pavement in a given street have been removed in order to permit the city to lay a sewer in the street beneath, the work of restoring the tracks and such pavement after the construction of the sewer is a duty resting upon the railroad company within its obligation under section 178 of the Railroad Law to " keep in permanent repair."

APPEAL by the plaintiff, John J. Creem Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 3d day of May, 1918, upon the verdict of a jury rendered by direction of the court, both sides having moved for the direction of a verdict at the close of the case, and also from the order entered in said clerk's office on or about the 16th day of April, 1918, pursuant to which the judgment was entered.

*John C. Wait* [*Howard G. Wilson* with him on the brief], for the appellant.

*William E. C. Mayer* [*William P. Burr, Corporation Counsel,* and *Terence Farley* with him on the brief], for the respondent.

MILLS, J.:

This action was brought by the plaintiff, a contracting corporation, to recover from the defendant city a balance claimed by the plaintiff to be due for the construction by it of a section of a large trunk sewer in a Brooklyn street, under a written contract between the parties entered into on April 22, 1913, and performed by the plaintiff by April 24, 1915. The work amounted to a large sum, most of which was duly paid, and the controversy in the action relates to only a few comparatively small items. The first of those items is the only one as to which a decision can be of importance as a

precedent. The appellant claims that similar items are involved in several cases or instances that await determination. At the conclusion of the trial each party moved for a direction of a verdict in its behalf. By consent of counsel the decision of the motions was reserved and briefs submitted. Subsequently the learned trial justice decided in favor of the defendant upon each claim involved in the action and directed a verdict for defendant accordingly.

At the end of the trial the plaintiff claimed the right to recover four items, viz.: (a) The sum of $1,823.20 withheld by the city for the cost to it of repaving within the so-called railroad area — that is, the space between the street railroad tracks, the rails of the tracks, and two feet in width outside of the tracks; (b) the sum of $580.01 withheld by the city for the cost of restoring pavement outside of the railroad area, which was in a state of disrepair when plaintiff began its work; (c) the sum of $255 for making fifty-one house connections; and (d) the sum of $1,061 for interest upon moneys unreasonably withheld by the city from the plaintiff — that is, the payment of which had been unreasonably delayed.

After examining the briefs submitted by the respective learned counsel I have concluded that there is no real, meritorious question here as to any of those items, except the first. As to the second item, plaintiff's claim is that as matter of law, where a pavement which it was by the contract required to replace, was when it began its work in a state of disrepair, it was not bound in restoring such pavement to put it in good condition, but apparently at the most only in the condition in which the plaintiff found it. That view appears to me forced and unnatural. At least I think that it was within the power of the city representative under the contract to construe the material provisions thereof as he did in that respect. I think, moreover, that the same view properly sustains the city's action as to the third item, and that the trial court, being by the mutual motions to direct a verdict substituted for the jury as to the facts, acted within the fair compass of his authority in determining that there was no reasonable delay in payment, at least not except as to the withholding the amount of the first item, and, therefore, in denying the general claim for interest.

The validity of the plaintiff's claim as to the first item appears to depend, at least in the first instance, upon the proper construction to be given to section 39 of the contract, under the heading " Specifications.  General."  The appellant claims that the clause *" on account of any act or omission on the part of the Contractor,* his agents, servants or employees, *in the prosecution of the work,"* qualifies or limits both of the preceding clauses, viz.: the clause *" shall be removed, destroyed or injured by the construction of the sewer* and its appurtenances," and the clause " or which may be injured by traffic; " while the respondent claims that it is perfectly plain that such clause limits or qualifies only the latter prior clause.  The learned trial justice in the commencement of his opinion adopted the view of the respondent as to this question of construction.  He did that, however, by merely summarizing the provision of the first main clause with the limitation omitted and without at all discussing the opposing views upon the question of construction.  His opinion rests substantially upon two propositions, namely, (a) that under the Railroad Law the street railroad company is not bound to restore the pavement within the railroad area after it has been removed to enable the city to build a sewer in the street beneath; and (b) that the opinions of the corporation counsel to the contrary, which are in evidence, were given after the contract herein had been made and, therefore, could not have influenced the plaintiff to its prejudice in making its bid.  Those opinions indicate clearly that during at least the early part of the work performed under this contract the corporation counsel distinctly advised that such duty of restoration did rest upon the railroad company.  The opinion herein at Special Term (N. Y. L. J. April 11, 1918) cites the case of *City of New York* v. *Whitridge* (N. Y. L. J. Sept. 16, 1916; affd., without opinion, 187 App. Div. 882), wherein it was held that such duty of restoration did not rest upon the railroad company, and the pertinent provision of the Railroad Law, namely, section 178, was construed to that effect.  (See Consol. Laws, chap. 49 [Laws of 1910, chap. 481], § 178, as amd. by Laws of 1912, chap. 368.)  Much of the discussion of counsel here has been addressed to the question of the correctness of that decision or construction.  While no doubt that is of great importance as

affording a reason why the city should have desired to have its contract mean what its counsel now claims that it does mean, yet it appears to me to be of no controlling force. Indeed it may fairly be inferred from the above-recited opinions of the corporation counsel, although of a later date, that when this contract was made the law department of the city considered that the true construction of that section of the Railroad Law did place upon the railroad company that duty of restoration; and the respondent's counsel upon the argument here admits that that department did not change its such view until after the decision of the court in the *Whitridge* case above cited.

In the instant case the tracks and the pavement in question were actually removed by the railroad company, after notice by the city, to enable the appellant contractor to perform its work. Under the doctrine of *City of New York* v. *Whitridge (supra)* the railroad company was under no obligation to make such removal at its own expense, but in fact it did so. I am strongly impressed that the appellant's construction of section 39 of the specifications is correct, and that the limiting clause "*on account,*" etc., should be construed as limiting the clause "*removed, destroyed or injured by the construction of the sewer,*" etc., as well as the later clause "which may be injured by traffic." I am also impressed that the construction so formerly made by the corporation counsel of section 178 of the Railroad Law is also correct, and that where a street railroad company's tracks and the pavement between them in a given street have been removed in order to permit the city to lay a sewer in the street beneath, the work of restoring the tracks and such pavement after the construction of the sewer is a duty resting upon the railroad company within its obligation under that section 178 to "keep in permanent repair." The precise question here presented does not appear to have been decided in any other case than that of *City of New York* v. *Whitridge (supra),* and a later case at the New York Special Term, viz., *Guaranty Trust Co.* v. *Second Ave. R. R. Co.* (N. Y. L. J. Nov. 21, 1916, cited in the opinion here at Special Term), which merely followed the decision in the *Whitridge Case (supra).* As stated in the opinion in the latter case at Special Term, the prior cases had directly decided only (a) that where the municipality repairs or renews the street pavement as a whole,

the railroad company is under the duty to lay the same kind of a pavement within the railroad area, whatever may have been the condition of the pavement there when the city undertook its such improvement; and (b) that where such an improvement as constructing a sewer requires the railroad structure to be protected, removed or relocated, the railroad company cannot charge the city with the expense of doing that work. It seems to me, however, that the view that the railroad company is bound to the duty of repair when the pavement within the railroad area has been necessarily destroyed by the act of the municipality in making an authorized street use of that area, as by building a sewer there, is within the fair principle of that decision and indeed within that of an early decision by this court, viz., *Brooklyn Elevated R. R. Co.* v. *City of Brooklyn* (2 App. Div. 98, 101). In that case the city constructed a sewer in a Brooklyn street, underneath the structure of the elevated railroad, and it became necessary to shore up that structure while the sewer work was going on. The question for decision in the submitted case was, which party, city or railroad company, should bear the expenses of such shoring. This court, by Mr. Justice CULLEN writing, unanimously held that the railroad company must bear those expenses. I perceive no logical distinction between that conclusion and the conclusion that in the instant case the railroad company is responsible for the cost of removing its track and the incidental pavement, and also of restoring the same. Therefore, it appears to me that the decision of the First Department in *City of New York* v. *Whitridge* (*supra*) is at variance with our earlier decision in the *Brooklyn Elevated R. R. Co. Case* (*supra*); nor am I able to appreciate any substantial difference between the duty of removing and restoring the pavement and that of laying a new pavement within an entirely new railroad area created by a relocation of the railroad tracks by municipal order as an incident of some street improvement. The latter duty appears to me to be expressly involved in the duty to relocate the tracks in the street according to such direction. Our former such opinion indicates that our conclusion there was based not upon the construction of any phrase of a railroad statute, but upon the general principle that a railroad company holds its rights

in the street subject to the right of the municipality to make any usual use of the street for a public purpose, such as the construction of a sewer. The same doctrine appears to have been held, in effect, in *Matter of Deering* (93 N. Y. 361), wherein it was decided that a gas company must defray the cost of taking up and replacing its pipes, necessitated by a change of street grade.

In *Conway* v. *City of Rochester* (157 N. Y. 33) and *Mayor, etc.,* v. *H. B., M. & F. R. Co.* (186 id. 304) the Court of Appeals held that the duty of the railroad company, under section 98 of the former Railroad Law (Gen. Laws, chap. 39 [Laws of 1890, chap. 565], as amd. by Laws of 1892, chap. 676), which is now section 178 of the present Railroad Law, to pave and keep the pavement in repair within the railroad area applied to the case where the municipality repaved the street with asphalt, an entirely new kind of pavement, although the existing pavement within that area was already being maintained by the company in good condition. I can perceive no substantial distinction between that case and the instant one. In each the existing pavement, although in good condition, was destroyed by the city's new street improvement in the exercise of its undoubted right of street user. Indeed, it would seem that the difference favors the instant case, as in it the new work inevitably destroyed the existing pavement and made repaving of that area absolutely necessary, whereas in the other instance such was not the situation, it being entirely practicable to leave the old pavement in that area.

In *City of New York* v. *Whitridge* (*supra*) we are not advised of the reasoning by which the Appellate Division in the First Department came to affirm the decision of the Special Term. The opinion of the latter court indicates that the learned justice reached his conclusion upon the ground that no prior decision had affirmed that precise duty, and also upon the ground that he thought the Legislature could not have intended said section 178 to impose that precise duty. While a Special Term decision, even so attained, is entitled to respect, yet it is not of very much authoritative force. Any other justice is equally entitled to his opinion as to such legislative intent; and mine is that the Legislature did intend by that section to impose that precise obligation — in other words, that it

intended by that section to impose upon a railroad company absolutely and at all events the duty of maintaining the pavement within the railroad area. ˙ It may be added that while no prior decision had affirmed that precise duty, it was equally true that none had denied it, and apparently the long general practice in this metropolitan locality had affirmed it.

If the view which I have taken of the construction of section 178 of the Railroad Law be correct, it would not matter if the respondent's construction of section 39 of the specifications is also correct, as in that event the pavement in question would not have been " removed, destroyed or injured by the construction of the sewer," but by the act of the railroad company in obeying the lawful direction of the municipality. As bearing upon the position taken by the corporation counsel it may be noted that Mr. Justice CULLEN in his opinion in the *Brooklyn Elevated R. R. Co. Case* (*supra*) said: " It has been the uniform course in this city and in New York that the street railroad companies bore whatever expense was entailed by the interference of street improvements with their railroad tracks." (2 App. Div. 102.)

My conclusion, therefore, is that we should maintain our own such prior decision in its full scope and hold the appellant entitled to recover upon its first item and award judgment to it accordingly.

I advise, therefore, that the judgment and order appealed from be reversed, with costs, and that judgment be awarded to the plaintiff for the sum of $1,823.20, with interest thereon from May 29, 1915, and for costs. .

JENKS, P. J., RICH, BLACKMAR and JAYCOX, JJ., concurred.

Judgment and order reversed, with costs, and judgment unanimously awarded to the plaintiff for the sum of $1,823.20, with interest thereon from May 29, 1915, and for costs.